IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CATHERINE SCHIEL-LEODORO, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Commissioner of Social Security Administration <br><br> Defendant. | CV 14–276–M–DLC–JCL <br><br> FINDINGS & RECOMMENDATION |

Plaintiff Catherine Schiel-Leodoro brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, §§ 1382-1385. Schiel-Leodoro protectively filed her application on August 8, 2011, alleging disability since February 8, 2008, due to back problems, dyslexia, and asthma. (Tr. 204). Schiel-Leodoro's claim was

denied initially and on reconsideration. Schiel-Leodoro appeared with counsel, at an administrative hearing in front of an administrative law judge (ALJ) on February 6, 2013. (Tr. 29-64). On April 23, 2013, the ALJ issued a decision finding Schiel-Leodoro not disabled within the meaning of the Act. (Tr. 12-21). The Appeals Council denied Schiel-Leodoro's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 1-7). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Schiel-Leodoro was 29 years old at the time of her alleged onset date, and 34 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.     Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20

C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Schiel-Leodoro had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15). At step two, the ALJ found that Schiel-Leodoro had the following severe impairments:

degenerative disc disease, migraines, and asthma. (Tr. 15). The ALJ concluded at step three that Schiel-Leodoro did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 15). The ALJ also found that Schiel-Leodoro's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence, and limiting effects" of her symptoms were not entirely credible. (Tr. 17). The ALJ concluded that Schiel-Leodoro had the residual functional capacity to perform a reduced range of light work. (Tr. 16). Based on that residual functional capacity assessment, the ALJ found at step four that Schiel-Leodoro could perform past relevant work as a cocktail waitress and safety inspector. (Tr. 19). The ALJ made alternative findings at step five, concluding that Schiel-Leodoro was also capable of performing sedentary work as an information clerk or bench assembler and light work as a machine tender or assembler. (Tr. 20).

### A. Prior Application

Schiel-Leodoro filed a prior application for benefits under Titles II and XVI, which was denied initially on September 16, 2010. Schiel-Leodoro did not appeal that initial determination, which became administratively final. In her decision on Schiel-Leodoro's current application, the ALJ noted that the February

18, 2008, onset date she alleged fell within the time period adjudicated in her prior application. (Tr. 12). Because Schiel-Leodoro alleged an onset date during the previously adjudicated period, the ALJ construed her current application as an implied request to reopen her prior application. (Tr. 12).

The Social Security regulations permit the Commissioner to reopen a decision on a prior application for benefits "[w]ithin 12 months of the date of the notice of the initial determination, for any reason." 20 C.F.R. § 404.988(a); § 416.1488(a). The regulations also allow the Commissioner to reopen a decision for good cause within two years of the initial determination on a Title XVI supplemental security income benefit application and within four years of the initial determination on a Title II disability insurance benefit application. 20 C.F.R. § 404.988(b); 416.1488(b). There is good cause for reopening a prior application if (1) new and material evidence is furnished; (2) a clerical error in the computation or recomputation of benefits was made; or (3) the evidence that was considered in making the determination or decision clearly shows on its face that an error was made. 20 C.F.R. § 404.898.

Schiel-Leodoro protectively filed her current application on August 8, 2011 – within 12 months of the initial determination on her prior application. This means the ALJ had the discretion to reopen the prior application for any reason.

Based on her review of the record, however, the ALJ found there was no reason – good cause or otherwise – to reopen Schiel-Leodoro's prior application. The ALJ thus denied Schiel-Leodoro's implied request to reopen her prior application, and considered only the time period after the initial decision on the prior application became final in September 2010. Because Schiel-Leodoro's insured status for purposes of Title II disability benefits had expired some six months earlier – on March 31, 2010 – the ALJ properly focused on the question of whether Schiel-Leodoro was entitled to supplemental security income benefits under Title XVI after the September 17, 2010 protective filing date of her current application.

Schiel-Leodoro argues the ALJ erred by denying her implied request to reopen her prior application. But it is well established that the district court does not have jurisdiction to review an ALJ's decision not to reopen a prior determination unless the claimant raises a colorable constitutional claim. *See e.g. Udd v.* Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001); *Panages v. Bowen*, 871 F.2d 91, 93 (9th Cir. 1989). Schiel-Leodoro does not raise any constitutional claims in her opening brief. She simply argues the medical records show that her physical and mental condition deteriorated after the initial determination on her prior application in March 2010. (Doc. 15, at 7). Absent a colorable

constitutional claim, this Court is without jurisdiction to review the ALJ's decision not to reopen Schiel-Leodoro's prior application.

For the first time in her reply brief, Schiel-Leodoro argues the ALJ's decision not to reopen her prior application violated her due process rights. She maintains that "[t]o the best of [her] knowledge the record does not contain a copy of the notice denying her March 1, 2010, application." (Doc. 25, at 3). Because Schiel-Leodoro raises this argument for the first time in her reply brief, the Court need not consider it. *See e.g.*, *Independent Towers of Washington v.* Washington, 350 F.3d 925, 929 (9th Cir. 2003); *Confederate Tribes of the Umatilla Indian Reservation v. Bonneville Power Admin.*, 342 F.3d 924, 933 (9th Cir. 2003).

But even considering Schiel-Leodoro's untimely argument, the Court finds she has not raised a colorable constitutional claim. While Schiel-Leodoro maintains that the initial denial on her prior application is not part of the administrative record, she does not appear to dispute that she received notice of the initial denial when it was issued. Schiel-Leodoro does not cite any authority for the proposition that failing to include the initial denial on a prior application in the administrative record on a subsequent application constitutes a due process violation. It is also important to note that Schiel-Leodoro was represented by counsel at the administrative hearing on her current application. Counsel asked

the ALJ to reopen the prior application, but said nothing about Schiel-Leodoro not having received notice of the initial denial and did not otherwise allege any due process violations. The Court thus finds Schiel-Leodoro has not presented a colorable constitutional claim.

Also for the first time in her reply brief, Schiel-Leorodo maintains this Court has jurisdiction to review a decision not to reopen a prior claim if the decision will lead to "manifest injustice." The Ninth Circuit has recognized that the doctrine of administrative res judicata should not be applied rigidly if doing so would result in manifest injustice tantamount to a denial of due process. *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982). Schiel-Leodoro argues based on the medical records that are part of her current application that failing to reopen her prior application will result in manifest injustice. Even assuming Schiel-Leodoro's medical records show that her physical and mental condition has deteriorated since the initial denial on her prior application, this is not enough to trigger the manifest injustice exception. The records Schiel-Leodoro relies on relate to a later time period and do not mean that allowing the initial denial on her prior application to stand will somehow result in manifest injustice. Because Schiel-Leodoro has not presented a colorable constitutional claim or otherwise shown that not reopening her prior claim will result in manifest

injustice, this Court lacks jurisdiction to review the ALJ's decision not to reopen Schiel-Leodoro's prior claim for disability benefits.

**B. Current Application**

Schiel-Leodoro contends the ALJ erred by disregarding the opinion of examining psychologist Dr. Theresa Reed and finding that she did not have any severe mental impairments.

To reject the controverted opinion of an examining physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Widmark v.* Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Widmark v. Barnhart*, 454 F.3d at 1066. 2006).

Dr. Reed examined Schiel-Leodoro for the first time in June 2008, on referral from Schiel-Leodoro's treating orthopedic surgeon Dr. Michael Woods. (Tr. 261-64). The examination was performed for the purpose of assessing Schiel-Leodoro's psychological functioning and whether she would be a good candidate for spinal surgery. (Tr. 261). Dr. Reed conducted a clinical interview and mental status examination, and administered the Minnesota Multiphasic Personality

Inventory (MMPI-2). (Tr. 261). Dr. Reed diagnosed Schiel-Leodoro with a pain disorder associated with psychological factors and a general medical condition, and found she would be a fair candidate for surgery. (Tr. 264).

Dr. Reed examined Schiel-Leodoro again in August 2011 for the similar purpose of assessing her psychological functioning and determining whether she would be a good candidate for various treatment approaches. (Tr. 945-52). Dr. Reed again conducted a clinical interview and mental status examination, and administered the MMPI-2. She also administered a battery of other psychological tests. (Tr. 945). Dr. Reed noted that in the three years since her first psychological examination, Schiel-Leodoro had undergone two spinal surgeries, participated in pain-related psychotherapy, and begun taking Zoloft. (Tr. 945, 948). Dr. Reed found that Schiel-Leodoro was a poor candidate for invasive treatment approaches due to a number of risk factors, including "mental health problems including current high levels of anxiety and depression as well as suicidal ideation." (Tr. 950). Dr. Reed wrote that Schiel-Leodoro was suffering from "significant anxiety and depression," and described her as "significantly demoralized and depressed at this time." (Tr. 950).

This time, Dr. Reed diagnosed Schiel-Leodoro with a moderate recurrent depressive disorder, in addition to a pain disorder. (Tr. 950-52). She opined that

Schiel-Leodoro needed "further psychological treatment" and thought that "outpatient psychological treatment would be insufficiently effective." (Tr. 951). Dr. Reed recommended "psychological treatment in the context of an inpatient pain program," noting that Schiel-Leodoro would be "most likely to respond to psychological treatment if it is closely related to treatment of her pain." (Tr. 951).

The ALJ briefly addressed Dr. Reed's 2008 report at step two, finding that it was not indicative of anything more than mild limitations and "revealed only a diagnosis of pain disorder associated with psychological factors and general medical condition." (Tr. 15). But the ALJ failed to mention Dr. Reed's 2011 report, which described Schiel-Leodoro's anxiety and depression as "significant." Dr. Reed specifically diagnosed Schiel-Leodoro with a moderate depressive disorder and recommended inpatient psychological treatment. It is difficult to see how Dr. Reed's recommendation can be reconciled with the ALJ's step two finding that her mental impairments caused no more than mild limitations.

But because Dr. Reed did not specify what those functional limitations might be, the Commissioner argues the ALJ was not required to consider her opinion. The Court disagrees. While the Commissioner correctly points out that the ALJ need not discuss all evidence presented, the ALJ must explain why "significant probative evidence has been rejected." *V incent ex rel. Vincent v.*

*Heckler,* 739 F.2d 1393, 194-95 (9th Cir. 1984). Dr. Reed's 2011 report is significant probative evidence relating directly to the severity of Schiel-Leodoro's mental impairments. The fact that Dr. Reed did not specifically assess Schiel-Leodoro's functional limitations does not mean the ALJ was free to entirely disregard Dr. Reed's opinion.

The Commissioner nonetheless argues that because the ALJ is responsible for weighing the medical evidence, she permissibly overlooked Dr. Reed's opinion in favor of the opinions provided by the state agency medical consultant, Dr. Marsha McFarland, and consultative examiner Dr. James Bailey.

Dr. Bailey examined Schiel-Leodoro in August 2010, and diagnosed her with an anxiety disorder. As the ALJ recognized, Dr. Bailey thought Schiel-Leodoro could have some public contact, had adequate attention, and should be able to do some two to three-step tasks. (Tr. 267). While the ALJ is tasked with weighing the medical evidence, he could not discount Dr. Reed's more recent opinion in favor of Dr. Bailey's without providing specific and legitimate reasons for doing so.

This error was compounded by the fact that the state agency consultant on whose opinion the ALJ relied does not appear to have reviewed Dr. Reed's 2011 report. Dr. McFarland issued her opinion in February 2012. (Tr. 84). While she

reviewed many of Schiel-Leodoro's medical records, including Dr. Reed's 2008 report and Dr. Bailey's August 2010 opinion, there is nothing to suggest that she considered Dr. Reed's 2011 report.

Dr. Reed's opinion was probative evidence regarding the severity of Schiel-Leodoro's mental impairments, and the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting it. While this Court might well be able to provide reasons of its own for discounting Dr. Reed's opinion, the Ninth Circuit has made clear that reviewing courts are "constrained to review the reasons the ALJ asserts" and should not engage in an independent analysis of the medical records. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). It would be error for this Court to identify reasons for rejecting these medical opinions that could have been provided by the ALJ, but were not. *See Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1054 (9th Cir. 2006). *See also Pinto v. Massannari*, 249 F.3d 840, 847 (9th Cir. 2001) (a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). The ALJ erred because he did not provide specific and legitimate reasons for discounting Dr. Reed's 2011 opinion.

While "[a] decision of the ALJ will not be reversed for errors that are harmless," *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), the Court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting that [evidence], could have reached a different disability determination." *Stout v. Commissioner Social Security*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Court cannot say with confidence that no reasonable ALJ, when fully crediting Dr. Reed's opinion, could have reached a different disability determination. Consequently, the ALJ's failure to properly reject this evidence cannot be viewed as harmless and this case should be remanded.

The next question is whether to remand for further administrative proceedings or for an immediate payment of benefits. According to the Ninth Circuit, the Court should credit evidence as true and remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues that must be resolved before a determination of disability can be made. Remand for further administrative proceedings is appropriate to determine the extent of Schiel-Leodoro's functional limitations in light of Dr. Reed's 2011 opinion, and whether there are jobs Schiel-Leodoro could perform given those limitations. Moreover, there is substantial doubt based on the medical record as whole whether Schiel-Leodoro is in fact disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014) (recognizing that even if all three parts of the credit-as-true rule are satisfied, the Court retains some "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act). Under the circumstances, remand for further administrative proceedings rather than for an immediate award of benefits is the appropriate remedy.[1]

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Schiel-Leodoro's motion for summary judgment be granted, the Commissioner's motion for summary judgment be

---

[1] Having so concluded, the Court need not consider Schiel-Leodoro's additional arguments that the ALJ improperly weighed other medical evidence also erred by finding she did not meet or equal the criteria of any listed impairments.

denied, and the Commissioner's decision be reversed. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion, including an evaluation of Dr. Reed's 2011 opinion. Accordingly,

IT IS RECOMMENDED that Schiel-Leodoro's motion for summary judgment be GRANTED, the Commissioner's decision be reversed, and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DONE and DATED this 29th day of January, 2016.

_____
Jeremiah C. Lynch
United States Magistrate Judge